# TAX ADJUSTMENT EXPERTS OF FLORIDA, INC., etc., et al. v. BRINKER, etc.

Case No. 84-584 CA

Eleventh Judicial Circuit, Dade County

June 19, 1984

### APPEARANCES OF COUNSEL

**Stuart L. Simon, Fine, Jacobson, Schwartz, Nash, Block, & England, P.A.,** for plaintiffs.

**James K. Kracht** for defendant, Property Appraiser, Franklin B. Bystrom.

**Stephen A. Schultz** for defendant, Richard P. Brinker.

### OPINION OF THE COURT

JON I. GORDON, Circuit Judge.

This cause came on to be heard and considered by the Court on June 14, 1984 on the Motion of the Plaintiffs for Preliminary Injunction. The Court heard and considered the testimony of Alfred H. Blake and Eugene J. Davidson of the Plaintiff Corporation, Tax Adjustment Experts of Florida, Inc.; the defendant Dade County Property Appraiser, Franklin B. Bystrom, and his assistant, Frank Jacobs; and listened to the argument presented by counsel for the aforesaid parties. Being fully advised in the premises, the Court reached the following factual or legal conclusions and enters the following declarative and injunctive order:

34

1. The relevant statute, Section 194.032(2), Florida Statutes, requires the Clerk of the Board of County Commissioners to transmit to the complaining taxpayer "a copy of the property record card containing relevant information used in computing the taxpayers' current assessment" together with a notice of the administrative hearing to be held before either the Property Appraisal Adjustment Board or a Special Master appointed by such Board at least 5 calendar days prior to the hearing at which the complaining taxpayer's petition for tax relief will be presented and considered. This property record card is required to be transmitted to the complaining taxpayer only if the taxpayer has checked the appropriate box on the petition form to indicate that he is requesting such information.

2. The Plaintiff Corporation, Tax Adjustment Experts of Florida, Inc., represents a substantial number of complaining taxpayers and assists them in preparing their respective petitions for tax relief and in presenting their cases seeking tax relief to the Special Masters appointed by the Property Appraisal Adjustment Board.

3. When a complaining taxpayer or his authorized agent checks the box on the petition form to indicate that he wishes to obtain a copy of the property record card containing the relevant information used in computing his assessment, he receives a card commonly referred to in the Property Appraiser's office as the Property Record Card. This card shows what the current assessment on the property is, the division of the assessment into land and improvement sections, the exemptions and/or special classifications applicable to the assessed property, occasionally the property's dimensions, and the assessments placed on the property in question during the current year and the past several years. The property card does not reflect how the assessment was actually computed or derived, however.

4. The Plaintiffs' complaint contends that the present Dade County Property Record card does not reflect all the relevant information used in computing the complaining taxpayer's current assessment, and asks the Court to require the Defendant officials to produce, in addition to the so-called property record card, the following items pertinent to the current assessment:

a) the land record or Lindi sheet which shows how the land value was arrived at;

b) the Building MAF Reference Card which shows in some detail how the building or improvement assessment was derived; and

c) The Income Analysis Sheet, which is a form used to determine

the capitalized value of the property under an income approach to value. These Income Analysis sheets are prepared based on either actual income and expense figures obtained by the Property Appraiser from the taxpayer or from some other source or on economic income and expense figures attributed to the property based on the Property Appraiser's hypothetical or estimated calculations. The Income Analysis Sheets are not prepared by the Property Appraiser's office for all income producing properties in Dade County in each and every year.

5. The Property Appraiser testified in response to questions from the Court that he used all of the records listed in the preceding paragraph to compute and calculate assessments, in addition to certain other records (such as the land pricing maps) when formulating his preliminary assessment roll in any year. He also admitted to the Court, as a most candid and truthful witness, that the present property record card does not show how the assessment was derived and that the other three records described in Paragraph 4 generally reflect how the assessment was derived.

6. Defendant BRINKER has indicated to this Court through his counsel, at a prior hearing, that he does not know whether the property record card furnished to him by the Defendant Property Appraiser can be said to contain "the relevant information used in computing the taxpayer's current assessment." He maintains that his duties are wholly ministerial in this regard and that he is not charged under the statute with determining whether the property record card furnished him by the Property Appraiser for transmittal to the petitioning taxpayer meets statutory requirements. He has indicated to the Court that he believes this decision must be made by the Property Appraiser and that he will transmit to the petitioning taxpayer whatever information is furnished to him by the Property Appraiser relating to the property of the petitioning taxpayer.

7. The Court therefore considers Section 194.032(2), Florida Statutes, to require the Defendants to provide the complaining taxpayer, who checks the designated box on the form of petition used to apply to the Property Appraisal Adjustment Board for a reduction, with any and all of the documents described in Paragraph 4 above that exist for the tax year in question, since all 4 of the documents "contain relevant information used in computing the taxpayer's current assessment". The Court believes that the legislative intent reflected in the statute is that the taxpayer be provided with the information that will tell him exactly how his assessment was calculated. This is particularly necessary when there is a presumption of correctness that attaches to the Property Assessor's assessment. When that assessment is to be presumed correct

unless the taxpayer can show that the assessment is wrong under all reasonable hypotheses of value (i.e., all 3 methods of valuations—comparable sales approach, cost replacement approach and income approach), the taxpayer is certainly entitled to know how his assessment was derived or calculated. Otherwise, his burden is insufferable and unjust.

8. The Court therefore orders the Defendants in this case to furnish to the Plaintiffs a copy of any or all of the 4 documents that pertain to that taxpayer's property for the tax year in question and that exist at the time of the mailing of the notice scheduling the taxpayer's appearance before the Property Appraisal Adjustment Board or a Special Master appointed by that Board.

9. The Plaintiff, Tax Adjustment Experts of Florida, Inc., has in excess of 200 cases for taxpayers it represents scheduled to be heard by Special Masters on Friday, June 15 and on June 18th, 19th, 20th and 21st, 1984. The Defendants had provided the Property Record Cards, the land record sheets and the Building MAF Reference Cards to the said Plaintiff in virtually all these cases. The Property Record Cards had been provided at no charge, but the land record sheets and the Building MAF Reference Cards have been charged against the said Plaintiff and paid for by said Plaintiff. Since these records fall within the provisions of Section 194.032, F.S., they should have been provided to the aforesaid Plaintiff without charge. The Court therefore requires the Defendants to refund any moneys paid by the Plaintiffs for these records (that should not have been charged for) within 30 days of the date of this Order.

10. With regard to the Income Analysis Sheets that should have been provided to the Plaintiff, Tax Adjustment Experts of Florida, Inc., for the cases scheduled to be heard on June 15th, June 18th, 19th, 20th and 21st, there was some conflict in the testimony of the parties as to exactly how many of these income analysis sheets had been furnished to the Plaintiff, Tax Adjustment Experts of Florida, Inc. Regardless of how many that had been furnished to the said Plaintiff, the Court directs that all those not yet furnished to the said Plaintiff and applicable to the cases to be heard on the dates stated shall be furnished as soon as possible to said Plaintiff. Those applicable to cases being heard on Friday, June 15th and Monday, June 18th, shall be furnished no later than Thursday afternoon, June 14th. Those applicable to cases being heard on Tuesday, Wednesday and Thursday, June 19th, 20th and 21st respectively, shall be furnished to the aforesaid Plaintiff on Monday, June 18th. Since these sheets are to be furnished without cost to the complaining taxpayer or his representative, there

will be no charge made for these analysis sheets to be furnished, and any charge made for income analysis sheets previously furnished to the aforesaid Plaintiff shall be refunded to the Plaintiff within 30 days of this Order.

11. The Property Appraiser is not required to furnish copies of any of the property records described in the preceding paragraphs unless he or members of his office have actually prepared and have such records in their possession. Where the Appraiser's office does not have a particular property record for the year in question but has relied on a record prepared for a prior year in computing the current assessment in question, the Property Appraiser shall furnish a copy of the prior year's record to the complaining taxpayer or his representative.

12. The Property Appraiser has pointed out to the Court that he is required by statutory provision to keep all actual income and expense information relating to a property and furnished by the taxpayer completely .confidential. The Court therefore directs the Property Appraiser to furnish Income Analysis Sheets applicable to a property only to the owner of that property or his authorized representative and to no one else. This applies to all situations in which actual income and expense information forms the basis of the income analysis made by the Appraiser. When the Income Analysis Sheet is based on economic or hypothecated information used by the Appraiser (rather than the actual income and expenses), then the Property Appraiser shall furnish a copy of the Income Analysis Sheet to the complaining taxpayer at his request and need not treat the information as confidential.